1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICHARD LEHMAN, on behalf of himself
and others similarly situated,

              Plaintiffs,

              v.

WARNER NELSON; WILLIAM BECK, JR.;
BRIAN BISH; KLAAS A. DeBOER;
MICHAEL G. MARSH; ROCKY SHARP;
RICHARD BAMBERGER; DENNIS
CALLIES; CLIF DAVIS; TIM DONOVAN;
HARRY THOMPSON; GARY
YOUNGHANS, in their capacity as Trustees
of the IBEW Pacific Coast Pension Plan,

              Defendants.

Case No. C13-1835RSM

ORDER ON MOTIONS

THIS MATTER comes before the Court upon Defendants' Motion to Dismiss Complaint

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Dkt. # 22), Plaintiff's Motion for Summary

Judgment (Dkt. # 23), Defendants' Motion to Postpone Ruling (Dkt. # 31), and Plaintiff's

unopposed Motion for Leave to File Supplemental Briefing (Dkt. # 41). The Court finds these

matters appropriate for resolution on the briefing. Having considered the parties' motions and

supporting documentation and opposition thereto as well as the remainder of the record, and for

the reasons stated herein, the Court denies Defendants' Motion to Dismiss, denies Defendants'

ORDER ON MOTIONS - 1

Rule 56(d) request to postpone judgment, grants Plaintiff's request to file supplemental briefing, and grants in part summary judgment in favor of Plaintiff.

### Background

Plaintiff Richard Lehman brings this purported class action pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA") to recover reciprocity contributions to his pension plan that he alleges were improperly withheld by Defendants, the plan's trustees.  Mr. Lehman has worked for a number of years as an electrician subject to collective bargaining agreements. Dkt. # 38 ("Compl."), ¶ 4.1. He is a member of the Puget Sound Electrical Workers Pension Trust (hereinafter, the "Puget Sound Trust" or the "Home Fund"), his local pension fund. Like many union members, Mr. Lehman's profession frequently requires him to perform work for employers outside of the jurisdiction of his Home Fund, including in a region governed by the IBEW Pacific Coast Pension Fund (the "Pacific Coast Fund"). In the latter half of 2008 alone, Mr. Lehman worked over 1000 hours within the jurisdiction of the Pacific Coast Fund. Dkt. # 24, ¶ 4, Ex. B.

In order to protect employees who work in multiple jurisdictions from losing benefits or being unable to accumulate them in one pension fund, the National Electrical Industry Pension Reciprocal Agreement (hereinafter, the "Reciprocity Agreement" or the "Agreement") was created to govern transfer of contributions between funds. *See* Dkt. # 24, Ex. D. Section 11 of the Reciprocity Agreement provides that "Participating Fund(s) shall transfer to the Temporary Employee's Home Fund(s) an amount of money equal to all Contributions Received. There shall be no administrative fee charged by a Participating Fund for the transfer or for any other reason."

ORDER ON MOTIONS - 2

*Id.* at p. 11. It is undisputed that the Pacific Coast Fund is a Participating Fund to the Reciprocity Agreement. Dkt. # 24, Ex. D.

During the time that Mr. Lehman has worked in the jurisdiction of the Pacific Coast Fund, he has requested that his contributions be transferred to his Home Fund, in accordance with the Reciprocity Agreement and with transfer and contribution provisions of the Pension Plan of the Pacific Coast Fund (hereinafter, the "Pension Plan" or the "Plan"). One such provision, § 5.04 of the Pension Plan, provides that:

> Under the Agreement at least monthly, each Participating Fund shall collect and transfer to the Home Pension Fund all contributions received on behalf of the Employee for work performed by the Employee within the jurisdiction of the transferring Participating Pension Fund. The transferred contributions shall be accompanied by such records and reports as are required by the National Electrical Industry Pension Reciprocal Agreement. Dkt. # 24, Ex. A, p. 29.

The Pacific Coast Fund and Puget Sound Trust have also entered into their own reciprocity agreement providing for reciprocal contribution transfers between funds.  Dkt. # 24, Ex. C. To allow for these reciprocal transfers, Mr. Lehman executed an Electronic Reciprocal Transfer System ("ERTS") authorization form, which authorizes the transfer of pension contributions from the Pacific Coast Fund to his Home Fund. Dkt. # 27, Ex. A.

On May 8, 2008, the Trustees of the Pacific Coast Fund approved Amendment No. 14 to the Pension Plan for the purpose of improving the Plan's funding condition. Dkt. # 31, Ex. 1-A. Pursuant to the Amendment, Defendants began to withhold the first dollar of each hourly contribution into the Plan, including contributions made for reciprocal transfers pursuant to Article 5 of the Plan document. *Id.* at ¶ 22, Ex. 1-A. As a result, the Pension Plan has withheld $1.00 for all hourly contributions made on behalf of Mr. Lehman since July 1, 2008, with the remaining contributions continuing to be transferred into his Home Fund. For instance, in March 2009, Mr. Lehman worked 136 hours in the jurisdiction of the Plan, for which his employer

ORDER ON MOTIONS - 3

1    contributed $4.62 per hour towards Mr. Lehman's pension. Of the total $628.32 of pension

2    contributions, the Pension Plan withheld $136.00 for use by the Pacific Coast Fund and

3    transferred $492.32 to Mr. Lehman's Home Fund.

4        The Plan entered critical status for the Plan year beginning April 1, 2009. *Id.* at ¶ 15. In

5    response, the Trustees developed a Rehabilitation Plan pursuant to the Pension Protection Act of

6    2006. *Id.* at ¶ 16.The Rehabilitation Plan created a default schedule, incorporated into the Plan,

7    which provides, in relevant part, that traveling employees who work inside the Plan's jurisdiction

8    "shall have the first dollar of each hourly contribution (for contributions rates less than $3.00 per

9    hour), all increased non-benefit contributions under any Schedule and all employer surcharge

10   contributions remain in the [Pacific Coast Fund] for funding purposes only." *Id.* at Ex. 1-E, p. 83.

11   The Pension Plan thereafter continued to withhold the first dollar for each hourly contribution

12   made on behalf of Mr. Lehman, for which he received no pension benefits. *See* Dkt. # 25

13   (Lehman Decl.), ¶ 5. On May 29, 2013, Mr. Lehman sent a letter to the Pacific Coast Fund

14   making a claim for contributions made on his behalf, requesting that all withheld contributions

15   be transferred to his Home Fund. *Id.* at Ex. A. Mr. Lehman received no response to his claim. *Id.*

16   at ¶ 7.

17       Mr. Lehman filed the instant civil action on October 10, 2013. Dkt. # 1. Mr. Lehman's

18   Complaint states three claims for relief pursuant to ERISA: recovery of benefits due under the

19   Pension Plan under § 1132(a)(1)(b), relief for fiduciary breaches of the Plan under § 1132(a)(2),

20   and equitable and injunctive relief under § 1132(a)(3). Plaintiff claims that the withholding of

21   $1.00 for each hourly contribution into the Pension Plan without benefit accrual violates Plan

22   provisions, the Reciprocal Agreement incorporated into the Plan, and Sections 204 and 305 of

23   ERISA. The instant Motions to dismiss and for summary judgment followed.

ORDER ON MOTIONS - 4

### Motion to Dismiss

Defendants have moved to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that: (1) Mr. Lehman is not a Participant in the Pension Plan and therefore has no statutory standing to bring a claim against it,[1] (2) Mr. Lehman has waived his right to bring a claim for the withheld funds, and (3) Mr. Lehman's claim for benefits under the Reciprocity Agreement is improper as he has no rights to enforce the terms of the agreement. *See* Dkt. # 22. Though Defendants raise their claim to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the Ninth Circuit has made clear that a challenge to participant status under ERISA is a merit-based determination rather than a jurisdictional one. *See Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 979 (9th Cir. 2012) (holding that "[t]he issue of participant status goes to the merits of [plaintiff's] claim and not to the subject matter jurisdiction of the district court."). Defendants have so conceded on reply. *See* Dkt. # 30, p. 1, n. 2. Accordingly, as Defendants challenge Plaintiff's statutory rather than constitutional standing, the Court considers whether Plaintiff's complaint must be dismissed for failure to state a claim on which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### a) Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where the plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be

---

[1] By contrast, a challenge to a plaintiff's Article III standing would properly address the court's subject matter jurisdiction pursuant to Rule 12(b)(1). *Cf. Central States Southeast and Southwest Areas Health and Welfare Fund v. MerckMedco Managed Care, LLC*, 433 F.3d 181, 199 (2d Cir. 2005); *Palmason v. Weyerhaeuser Co.*, 2013 WL 4511361 (W.D. Wash. 2013).

dismissed." *Twombly*, 550 U.S. at 570.  A claim is facially plausible if the plaintiff has pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). In making this assessment, the Court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party.  *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). Where claims are dismissed under Rule 12(b)(6), the court "should grant leave to amend…unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

### b) Participant Status

Defendants first argue that Plaintiff lacks standing to bring a claim under ERISA against Defendants because he is not a participant in the Pension Plan. Whether Plaintiff is a participant in the Plan for purposes of ERISA is a substantive element of his claims and not a jurisdiction pre-requisite. *Leeson*, 671 F.3d at 971. In order to possess standing to bring a claim under ERISA, a plaintiff must assert "a colorable claim that he or she is a participant" in the ERISA-governed plan at issue. *Id.* at 978. A claimant is a participant under ERISA if the claimant has a "colorable claim that (1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future." *Firestone Tire and Rubber Co. c. Bruch*, 489 U.S. 101, 11718 (1989); *see also* 29 U.S.C. § 1002(7). Further, in the Ninth Circuit, the definition of "participant" contained in the Plan itself controls the court's inquiry, so long as it does not conflict with statutory requirements. *Flanagan v. Inland Empire Electrical Workers Pension Plan and Trust*, 3 F.3d 1246, 1248 (9th Cir. 1993).

Here, the Court has little trouble in finding that Plaintiff meets the Plan's requirements for participation, giving rise to his standing to bring ERISA claims. Section 1.15 of the Pension Plan defines a "Participant" as a "Pensioner, Beneficiary, or an Employee who meets the requirements for participation in the Plan as set forth in Article 2, or a former Employee who has attained Vested Status under this Plan." Dkt. #24, Ex. A at p. 14. The definition of "Employee" encompasses those who "perform[] work covered by any of the collective bargaining agreements" as well as workers who do not perform work covered by a "collective bargaining agreement provided all such Employees are covered by contributions to this Fund." *Id.* at p. 11, § 1.08.[2] Section 2.02 further lays out the requirements for Participation in the Plan: "An Employee who works in Covered Employment during the Contribution Period shall become a Participant in the Plan as soon as he has at least 435 Hours of Work in Covered Employment during any Plan Credit Year." *Id.* at p. 18. It is undisputed that Mr. Lehman has performed more than 435 Hours of Covered Employment during a Plan Year, thereby meeting the definition of Participant as set out in the Plan. *See* Dkt. # 24, Ex. B. As a Plan Participant, and as set forth in detail below, Plaintiff has asserted claims under ERISA for benefits owed by the Plan that are beyond colorable, and dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is accordingly improper.

### c)  Waiver of Rights

Also unavailing is Defendants' assertion that Plaintiff has waived his right to seek benefits from the Plan by executing an ERTS form. The ERTS form executed by Mr. Lehman provides that,

> "For hours and monies transferred pursuant to this authorization, I hereby waive any claim on my behalf or on behalf of anyone making a claim through me to any benefits from any transferring pension fund(s) and release the fund(s) and its (their) trustees from any and all liability." Dkt. # 27, Ex. A.

---

[2] Defendants do not dispute that Plaintiff meets the Plan's definition of "Employee."

ORDER ON MOTIONS - 7

By its plain language, this waiver only applies with respect to claims asserted for monies transferred pursuant to the authorization. Funds withheld by the Defendants have not been transferred pursuant to the authorization, and thus the waiver does not apply to them.

### d) Enforcement of Reciprocity Agreement

Defendants further contend that Plaintiff lacks standing to enforce the terms of the Reciprocity Agreement. Having already found that Plaintiff has standing to bring his claims under ERISA, the Court reaches this subsidiary argument solely to clarify the relationship of the Agreement to Plaintiff's claims. First, contrary to Defendants' assertions, Plaintiff is not suing to enforce the terms of the Reciprocity Agreements as a standalone contract but rather to enforce the terms of the Pension Plan, which in turn incorporates aspects of the Reciprocity Agreement. *See, e.g.,* Dkt. # 24, Ex. A, p. 29, § 5.04 (providing for reciprocity contributions to be transferred in conformity with reporting requirements of the Reciprocity Agreement). Thus, the fact that Mr. Lehman is not himself a party to the Reciprocity Agreement is inapposite and has no bearing on his standing to bring a claim for benefits under the Plan. *See* Dkt. # 22, Ex. 1 (Reciprocity Agreement) at pp. 1, 16 (providing that only participating pension plans in the Electrical Industry may be parties to the Agreement).

Equally unavailing is Defendants' confusing assertion that Plaintiff's claim is barred because the Agreement's arbitration provision has not been followed. As Defendants themselves attest, only participants in the Agreement are bound by its provisions. The Reciprocity Agreement requires that all disputes between participating funds arising out of the Agreement be referred to the Reciprocal Administrative Office, with notice provided to the participating plan within 180 days of the cause of the dispute. If not satisfactorily resolved, the dispute shall then

ORDER ON MOTIONS - 8

be referred to an arbitrator. *Id.* at p. 16. As Mr. Lehman is not in a participating fund and, by Defendants' own admission, has no standing to enforce its terms, he cannot possibly seek to arbitrate, nonetheless be bound by the Agreement's arbitration provisions. Rather, it is ERISA that provides Mr. Lehman the right as a participant in the Plan to file a civil action in federal court to enforce the Plan's terms. *See* 29 U.S.C. § 1132(a).

## __Summary Judgment__

Plaintiff moves for summary judgment on all claims against Defendants. Plaintiff contends that the withholding of $1.00 per hour from transfer contributions violates Article 5 of the Plan, that Defendants' failure to credit any benefit accrual to Plaintiff for the withheld funds violates ERISA Sections 204 and 305, and that Plaintiff is entitled to a transfer of the withheld contributions and an injunction prohibiting future withholdings. Plaintiff further seeks an award of attorney fees and costs should he prevail on his claims, pursuant to ERISA § 502(g). Defendants both object to summary judgment in favor of Plaintiff on the merits of his claims and seek to postpone ruling on Plaintiff's Motion pursuant to Fed. R. Civ. P. 56(d).

Though Plaintiff filed his Motion prior to discovery, he has also moved to file a four-page supplemental brief regarding the application of Rule 56(d) and the fundamental fairness of reciprocity transfers. Dkt. # 41. Plaintiff's supplemental brief introduces evidence acquired during discovery regarding the ERTS authorization forms signed by putative class members and the greater amount of reciprocity transfers into the Pension Plan than out of it to traveling employees' home funds. As Defendants have neither objected to the supplemental brief nor requested an opportunity to respond, and as the Court finds the supplemental evidence instructive but not dispositive, it grants Plaintiff's Motion and considers his supplemental brief.

**a) Rule 56(d) Continuance**

As an initial matter, the Court considers Defendants' request to stay a ruling on Plaintiff's Motion for Summary Judgment on the asserted grounds that the Motion is made prematurely. Federal Rule of Civil Procedure 56(d) allows for the Court to defer consideration of a motion where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot represent facts essential to justify its opposition." Defendants contend that the Motion should be continued to allow the Court to first consider class certification in order to avoid what Defendants suggest would otherwise be "a bifurcated litigation process." Dkt. # 31, p. 13. Defendants also assert that discovery is needed in order to ascertain which putative class members executed an ERTS form that matches Mr. Lehman's and further, whether traveling employees, including Mr. Lehman, "understood that they were waiving pension accruals or claims against [the Pacific Coast Fund] by executing an ERTS form." *Id.* Plaintiff opposes continuance on the grounds that Defendants have failed to satisfy the procedural requirements for a Rule 56(d) continuance or to show that an extension is appropriate or justified. The Court agrees.

First, Defendants have failed to comply with the procedural requirement of Rule 56(d) necessary to assist the Court in evaluating whether a continuation is warranted. To obtain relief under Rule 56(d), "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Defendants have failed to file the required affidavit, a deficiency that itself justifies denying the instant Motion. *See Stern v. SeQual Technologies, Inc.*, 840 F.Supp. 2d 1260, 1275 (W.D. Wash. 2012).

ORDER ON MOTIONS - 10

In its substance, Defendants' Motion fails to put forward any specified reasons that Defendants cannot present facts essential to justify their opposition. Instead, Defendants seek discovery related to class-certification requirements, instructing the Court that it would be prudent to consider class-certification prior to the merits of Plaintiff's claims. Of course, the District Court possesses inherent authority to manage litigation and control their dockets. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260 (9th Cir. 1992). While class certification is to be determined as soon as practicable, the Court is not required to address certification prior to ruling on summary judgment. *See Wright v. Schock*, 742 F.2d 541, 544 (9th Cir. 1984); *Blough v. Shea Homes, Inc.*, 2013 WL 6276450 (W.D. Wash. 2013). Further, Defendants have consented to merits resolution prior to summary judgment by filing their own motion for dismissal. *Wright*, 742 F.2d at 544. As to Mr. Lehman's knowledge of his waiver of claims, his ERTS authorization form is already in evidence and provides by its plain language evidence of his intent. *See McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir. 2009). As discussed above, it is also inapposite with respect to Plaintiff's ability to assert his rights to withheld funds. The Court finds that resolution of Plaintiff's dispositive Motion will lead to the efficient management of this litigation, and as Defendants have failed to identify facts that are either absent or in dispute to warrant deferral, the Court denies Defendants' Rule 56(d) Motion.

**b) Standard of Review**

A motion for summary judgment requires the court to determine whether the movant is entitled to judgment as a matter of law on identified claims or defenses based on the evidence thus far presented. Fed. R. Civ. P. 56(a). Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

Material facts are those that may affect the outcome of the suit under governing law. *Id.* at 248. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In ruling on a motion for summary judgment, the court is not empowered to make credibility determinations or weigh the evidence, but may only determine whether there is a genuine issue of fact for trial. *Crane v. Conoco*, 41 F.3d 547, 549 (9th Cir. 1994); *Anderson*, 477 U.S. at 255. However, conclusory allegations and speculative or unsubstantiated testimony are insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 345 (9th Cir. 1995). Further, "the inferences to be drawn from the underlying facts…must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**c)  Benefits Claim**

Plaintiff first seeks to recover benefits owed under the Pension Plan and to clarify and enforce his right to future benefits under the Plan's terms, pursuant to 29 U.S.C. § 1132(a)(1)(B). Plaintiff contends that Defendants violated Article 5 of the Pension Plan by subjecting reciprocity transfers to a $1.00/hour withholding. Defendants deny that they violated the Plan. Rather, they assert that they amended the Plan to allow for the withholdings through Amendment No. 14. Defendants further assert that to the extent Plaintiff attempts to locate a violation in the terms of Reciprocity Agreement, he lacks standing to enforce the Agreement to which he is not a party.

**1.  Violation of Article 5 of the Pension Plan**

ORDER ON MOTIONS - 12

The Court agrees with Plaintiff that the plain language of Article 5 of the Pension Pan precludes withholding of any funds subject to reciprocity transfer. Section 5.04 mandates that the Pension Plan collect and transfer "*all* contributions received on behalf of the Employee." Dkt. # 24, Ex. A, p. 29 (emphasis added). Article 5 also contains various indicia that it is to be construed in accordance with the terms of the Reciprocity Agreement. Section 5.01 of the Plan provides that the Article is only operative if the Reciprocity Agreement has been adopted by the signatory funds in the jurisdiction in which the Employee works. *Id.* Section 5.04 of the Plan further provides that reciprocity contributions are to be "accompanied by such records and reports as are required by the [Reciprocity Agreement]." The Reciprocity Agreement itself is unambiguous in disallowing withholdings on contributions subject to reciprocity transfer: "The Participating Fund(s) shall transfer to the Temporary Employee's Home Fund(s) an amount of money equal to all Contributions received." *Id.* at Ex. D, § 12,  p. 97. The Agreement bars withholdings for the purposes of subjecting transfers to an "administrative fee" or "for any other reason." *Id.* A fund may not unilaterally amend the terms of the Reciprocity Agreement, which can only be altered by the approval of a simple majority of participating funds. *Id.* at § 27(a), p. 101. Thus, to the extent that Article 5 of the Plan remains in effect, Defendants' withholdings are in violation of its terms.

### 2.   Effect of Amendment No. 14

Defendants nonetheless assert that Amendment No. 14 provides for the controverted withholdings and modifies any Plan provisions to the contrary. The Amendment provides for the withholding of the first dollar of required contributions for each hour of Covered Work on and after July 1, 2008 to be used to improve funding of the Plan, "[n]otwithstanding…any other provision of the Plan." Dkt. # 31, Ex. 1-B. The Amendment further specifies that the "same

reduction is applicable for required Contributions pursuant to…reciprocal transfers." *Id.* Plaintiff contends that the Amendment is ambiguous with respect to whether it applies to reciprocal transfers out of as well as into the Plan, and that such ambiguity must be interpreted so as to avoid rendering nugatory other Plan provisions or conflicting with ERISA. The Court agrees.

The federal common law of ERISA guides the Court's interpretation of the Plan terms and instructs that unambiguous Plan language is to be given its presumed intended effect. *See Carr v. First Nationwide Bank*, 816 F.Supp. 1476, 1493 (N.D. Cal. 1993) (citing *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 93 (3d Cir. 1992)). The Court interprets the plain language of the Plan "in an ordinary and popular sense as would a person of average intelligence and experience." *Tapley v. Locals 302 and 612 of the International Union of Operating Engineers – Employers Construction Industry Retirement Plan*, 728 F.3d 1134, 1140 (9th Cir. 2013) (internal quotations omitted). At the same time, the Plan is to be construed as a whole and the specific language of each provision interpreted in the Plan's entire context. *Carr*, 816 F.Supp. at 1493. Even where a Plan extends discretionary authority to Trustees to construe its terms, Trustees violate this authority and abuse their discretion where they construe provisions of a plan in a way that conflicts with the Plan's plain language, renders nugatory other provisions, or lacks a rational connection to the Plan's primary purpose. *Tapley v. Locals 302 and 612 of the International Union of Operating Engineers – Employers Construction Industry Retirement Plan*, 728 F.3d 1134, 1140 (9th Cir. 2013); *Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997) ("Each provision in an agreement should be construed consistently with the entire document such that no provision is rendered nugatory.").

Applying these principles to the Pension Plan, the Court finds that the Trustee's interpretation of the Amendment cannot withstand even deferential scrutiny. The term

"reciprocal transfers" is not defined in the Plan itself, and the Court agrees with Plaintiff that it is ambiguous in that it can refer to both transfers "into" and "out of" the Fund. The Reciprocity Agreement, for instance, distinguishes between these two sides of the reciprocity transfer coin, specifying distinct rules that apply to transfers out of a Participating Fund (Section 12) and into a Home Fund (Section 19). Dkt. # 24, Ex. D. To the extent that Amendment 14 applies solely to transfers into the Pension Plan when it operates as an Employee's Home Fund, it neither conflicts with Article 5 of the Plan nor with the terms of the Reciprocity Agreement incorporated into it. However, to the extent that Amendment 14 applies to both transfers "out" and "in" or solely to transfers "out," it conflicts with the plain language of and renders nugatory both Section 5.04 of the Plan and Section 11 of the Reciprocity Agreement.  Applying Amendment 14 to authorize withholdings on Mr. Lehman's contributions also conflicts with the later-enacted Article 16 of the Rehabilitation Plan, which only allows for withholding on reciprocal transfers out of the Plan for contribution rates less than $3.00 per hour. Dkt. # 24, Ex. F, p. 111. It is undisputed that Mr. Lehman's rates were in excess of this amount. In interpreting Amendment 14 in this fashion, the Trustees thus abuse any discretion that the Plan extends them to interpret its terms.[3]

The restrictions that the Plan and the Reciprocity Agreement impose on withholdings of outgoing contributions are logical and support equitable treatment of pension contributions for traveling employees. As counsel for the Administrator of the Reciprocity Agreement pointed out,

---

[3]  Denial of benefits under § 1132(a)(1)(B) "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms for the plan." *Firestone*, 489 U.S. at 115. In this latter case, where the ERISA plan grants such discretionary authority, the plan administrator's interpretation of its terms is reviewed for abuse of discretion. *Tapley*, 728 F.3d at 1139. Here, Defendants contend that the Trustees' interpretation is to be reviewed for abuse of discretion but have not pointed to the provision providing for such discretionary authority. As Plaintiff, however, has not refuted that this standard applies, the Court assumes without deciding that Plaintiff's benefits claim is to be reviewed for abuse of discretion.

ORDER ON MOTIONS - 15

"the participating fund merely acts as a conduit to the money transferred to the correct fund," and allowing withholding on both transfers into and out of a fund would uniquely subject contributions for traveling employees to double taxation. Dkt. # 24, Ex. G. Restricting participating funds to impose withholdings only on reciprocity contributions transferred in prevents such double taxation while still allowing participating funds to protect their financial integrity. *See* Dkt. # 41 (showing that contributions flowing into the Pension Plan in 2013 exceeded nearly three-fold contributions out).

Alternatively, an Amendment allowing for withholding of outgoing reciprocity transfers would be subject to reformation because it conflicts with governing Plan documents and with ERISA mandates. Defendants correctly assert that the Trustees have authority under the Plan and established ERISA precedent to amend the Plan in accordance with its specified procedures. *See* Dkt. # 24, Ex. A, § 14 (Article 14 of the Plan, providing amendment procedures); *Curtiss-Wright v. Schoonejongen*, 514 U.S 73, 78 (1995) (providing that employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans). This authority, however, is not without limitation. For instance, courts have limited the discretion of ERISA fiduciaries to amend or interpret plans in a manner that violates ERISA itself or so as to permit an act expressly forbidden elsewhere by the plan. *See Ford v. Owens-Illinois*, 2012 WL 8884353, *10 (N.D. Ohio 2012); *Bryant v. International Fruit Prods. Co.*, 793 F.2d 118, 122-23 (6th Cir. 2013). The doctrine of reformation permits the reviewing court to strike an amendment that is invalid under the terms of the plan's governing documents. *See Cigna Corp. v. Amara,* 131 S.Ct. 1866, 1879-80 (2011); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1161 n. 6 (3d Cir. 1999).

Here, Amendment 14 cannot supersede the incorporated provisions of the Reciprocity Agreement regulating reciprocal transfers, which itself can only be amended by a majority of Participating Funds. No such amendment of the Agreement has taken place. Further, the Plan so amended would violate Section 305 of ERISA, which prevents Plans from adopting default schedules that would entirely eliminate future accruals.[4] ERISA Section 305(e)(6)(A) provides a statutory floor on the rate of future benefit accruals under a rehabilitation plan default schedule equal to 1% of the contributions made on the participant's behalf. 29 U.S.C. § 1085(e)(6)(A). In so doing, Section 305 ensures that even where a plan is in critical status, its fiduciaries cannot entirely repurpose contributions made on behalf of its participants for refinancing a plan without allowing the participants to obtain some minimum amount of pension benefits accrual. Defendants violate this statutory floor by withholding Mr. Lehman's pension contributions without providing him any benefit accrual on the withheld funds. It is of no moment, as Defendants suggest, that Plaintiff continues to accrue benefits under his Home Fund or that he executed an ERTS form providing for reciprocal transfers rather than pro rata pension accrual in both Funds. *See* Dkt. # 31, p. 8. Once Defendants diverted contributions from transfers to Mr. Lehman's Home Fund and deposited them into the Pacific Coast Fund, Mr. Lehman was entitled under ERISA § 305(e)(6) to a minimum accrual equal to one percent of withheld contributions. The Pacific Coast Fund, in adopting the rehabilitation plan, is bound to satisfy the requirements of ERISA § 305 and cannot shift its accrual obligations onto a different Fund.  The Trustees breached their fiduciary duties to the Plan by interpreting the Amendment in a way that violates the Plan's governing documents as well as ERISA. 29 U.S.C. § 1104(a)(1)(D).

### 3.  Appropriate Remedies

---

[4] Having located a violation of the Plan documents and ERISA Section 305, the Court does not consider Plaintiff's additional argument that the Trustees' interpretation of the Amendment violates the anti-cutback provisions of ERISA Section 204.

Having found that Defendants withheld Mr. Lehman's contributions in violation of the Plan, the Reciprocity Agreement incorporated into it, and ERISA Section 305, the Court determines that Plaintiff is entitled to the transfer of wrongfully withheld benefits to his Home Fund pursuant to 29 U.S.C. § 1132(a)(1)(B).[5] Plaintiff is also entitled to a clarification of his future rights to receive reciprocity transfers to his Home Fund without withholding for administrative or other purposes.

### d) Fiduciary Breach

A cause of action under § 1132(a)(2) allows for recovery for a fiduciary breach causing injury to the plan. *See Cinell v. Security Pacific Corp.*, 61 F.3d 1437, 1445 (9th Cir. 1995) ("We recently clarified that 29 U.S.C. § 1109 governing liability for breach of fiduciary obligations under ERISA only allows recovery for injury to the plan itself.") "Individual beneficiaries may bring fiduciary actions against the plan fiduciaries, but they must do so for the benefit of the plan and not their individual benefit." *Id.* Unlike ERISA's benefits provisions, which are concerned with ensuring that claimants receive the benefits individually owed to them under the plan, the fiduciary provisions are concerned with protecting the integrity of the plan. Thus, a participant may only bring a claim for fiduciary breach under 29 U.S.C. § 1132(a)(2) where he acts as a representative of the plan with recovery inuring to the plan as a whole. *Boyd v. United Transp. Union Ins. Ass'n*, 2006 WL 581025 * 4 (W. D. Wash. 2006); *Mass Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) (noting that an § 1132(a)(2) claim can be brought only "to make good to [a] plan any losses to the plan ... and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan..."). Individuals may sue for breach of fiduciary

---

[5] Defendants have not objected to Plaintiff's benefits claim on other grounds, including that they are improper defendants or that remand to the trustees is the appropriate remedy.

ORDER ON MOTIONS - 18

duty on behalf of a plan if the rights of the plan participants and beneficiaries are violated in a willful and systematic way and remedies are sought to address injury to the plan. *Id.*

Here, Plaintiff asserts that Defendants violated their fiduciary duties by interpreting Amendment 14 in a way that violates other Plan terms and ERISA itself. Dkt. # 32 at p. 5. While adopting a plan amendment is not a fiduciary act, trustees act in a fiduciary capacity when interpreting and applying the terms of an amendment. *See Pratt v. Petroleum Mgmt. Inc. Employee Sav. Plan & Trust*, 920 F.2d 651, 657 (10th Cir. 1990). Among statutorily delineated obligations, ERISA provides that a fiduciary must discharge his duties with respect to a plan "in accordance with the documents and instrument governing the plan." 29 U.S.C. § 1104(a)(1)(D). With respect to Mr. Lehman, and for the above-stated reasons, the Court agrees that Defendants have failed to construe plan provisions and disburse contributions in accordance with the governing Plan documents and instruments. However, the Court cannot at this point find that Plaintiff has shown that Defendants breached their fiduciary duties in a manner that was willful and systematic and that caused harm to the Plan itself and not simply with respect to Mr. Lehman's accrual of pension benefits. Further, the relief that Plaintiff seeks – disbursement of wrongfully withheld benefits – is available under ERISA's benefits provision, § 1132(a)(1)(B). As the Supreme Court has pointed out, ERISA provided through its benefits provision "a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims, one that is outside the *second* subsection and cross-referenced § 409, and one that runs directly to the beneficiary." *Varity Corp.*, 516 U.S. at 512. As the remedy that Plaintiff seeks is otherwise available and as the Court cannot locate, on the record provided, a systematic and willful injury to the Pension Plan itself, the Court denies without prejudice summary judgment on Plaintiff's Second Cause of Action.

ORDER ON MOTIONS - 19

**e)   Other Equitable Relief**

Described as a "catchall" provision, ERISA Section 502(a)(3) offers "appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy." *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1995). "To establish an action for equitable relief under ... 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations [.]" *Mathews v. Chevron Corp.,* 362 F.3d 1172, 1178 (9th Cir.2004) (internal quotations and alterations omitted). Dismissal of a Section 502(a)(3) claim is appropriate at the summary judgment stage where a plaintiff has asserted claims under Sections 1132(a)(1)(B) and 1132(a)(2). *Ford v. MCI Comms. Corp. Health & Welfare Plan*, 399 F.3d 1076, 1083 (9th Cir. 2005), *rev'd on other grounds*, *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202 (9th Cir. 2011). As Plaintiff has asserted and prevailed on a claim for benefits, Plaintiff's claim for summary judgment on his Third Cause of Action is denied.

**f)   Attorney's Fees and Costs**

In an ERISA action brought by a participant, "the court in its discretion may allow a reasonable attorney's fee and costs to either party." 29 U.S.C. § 1132(g)(1). A fee claimant need not be the prevailing party to be eligible for fees but must "show some degree of success on the merits before a court may award attorney's fees under § 1132(g)(1)." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). However, the district court's determination that a party has achieved a degree of success on the merits does not end the inquiry. The Court must also consider the factors provided by *Hummel v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.

ORDER ON MOTIONS - 20

1980),[6] before exercising its discretion to award fees. *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1121 (9th Cir. 2010). Here, the Court finds that Plaintiff has substantially prevailed on the merits of his 29 U.S.C. § 1132(a)(1)(B) claim. However, Plaintiff has failed to address the appropriateness of a fee award under the *Hummel* factors. As such, the Court cannot grant Plaintiff's request for attorney's fees and costs at this time. Plaintiff may separately move for fees should he wish to pursue an § 1132(g)(1) award.

## Conclusion

For the reasons stated herein, the Court finds and Orders as follows:

(1) Defendants' Motion to Dismiss for lack of subject matter jurisdiction and failure to state a claim (Dkt. # 22) is DENIED.

(2) Defendants' Motion to Postpone Ruling on Summary Judgment (Dkt. # 31) is DENIED.

(3) Plaintiff's unopposed Motion for Leave to File Supplemental Briefing (Dkt. # 41) is GRANTED.

(4) Plaintiff's Motion for Summary Judgment (Dkt. # 23) is GRANTED in part.

   a. Summary judgment is granted in favor of Plaintiff on his First Cause of Action for benefits pursuant to 29 U.S.C. § 1132(a)(1)(B). The Court finds that Plaintiff is entitled to a transfer to Plaintiff's Home Fund of the reciprocity contributions wrongfully withheld by Defendants. The Court clarifies that Plaintiff is entitled to the future transfer of all such funds to his Home Fund without withholding, so

---

[6] These factors include: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Hummel*, 634 F.3d at 1121.

long as Article 5 of the Plan and the Reciprocity Agreement governing transfers from the Plan remain in effect.

b.  The Court denies without prejudice Plaintiff's Motion for Summary Judgment on his Second and Third Causes of Action.

c.  Plaintiff shall file a separate motion for fees should he wish to pursue an award of fees and costs under 29 U.S.C. § 1132(g)(1).


Dated this 11th day of September 2014.


RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON MOTIONS - 22